IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

APRIL 1999 SESSION



**FILED**

**July 8, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 02C01-9801-CC-00025 |
| | ) | |
| | ) | Madison County |
| v. | ) | |
| | ) | Honorable Franklin Murchison, Judge |
| | ) | |
| CHARLES EDWARD HOBSON, | ) | (Aggravated assault--two counts and criminal ) |
| | ) | trespass) |
| Appellant. | ) | |


For the Appellant:

Ramsdale O'De'Neal, Jr.
118 East Baltimore Street
Jackson, TN 38301

    and
George Morton Googe
District Public Defender
    and
Daniel J. Taylor
Assistant Public Defender
227 W. Baltimore
Jackson, TN 38301
(AT TRIAL)

Clifford K. McGown
Attorney At Law
113 N. Court Square
P.O. Box 26
Waverly, TN 37185
(ON APPEAL)

For the Appellee:

Paul G. Summers
Attorney General of Tennessee

    and
Georgia Blythe Felner
Assistant Attorney General of Tennessee
450 James Robertson Parkway
Nashville, TN 37243-0493

James G. (Jerry) Woodall
District Attorney General
    and
Donald Allen
Assistant District Attorney General
225 Martin Luther King Dr.
P.O. Box 2825
Jackson, TN 38302-2825


OPINION FILED:_____


AFFIRMED

Joseph M. Tipton
Judge

# O P I N I O N

The defendant, Charles Edward Hobson, appeals as of right from his convictions by a jury in the Madison County Circuit Court for two counts of aggravated assault, a Class C felony, and one count of criminal trespass, a Class C misdemeanor. He was sentenced as a Range II, multiple offender, to ten years for each aggravated assault to be served in the Department of Correction and to thirty days in the county jail for the criminal trespass conviction. All three sentences are to run concurrently. The defendant contends that the evidence is insufficient to support his convictions for aggravated assault. We affirm the judgments of conviction.

Officer Gregory Slack of the Jackson Police Department testified that around 9:30 p.m. on November 16, 1997, he and Officer Jeff Whitworth were patrolling Parkview Courts, a high crime area, in an unmarked brown Crown Victoria. He said that Officer Whitworth was driving and that he was in the passenger seat. He said that although it was unmarked, their car was generally recognized as a police car because they often patrolled that area in that type of car. He said that as they passed building 112, they saw three black males standing in the breezeway between buildings 112 and 114. He said that no one else was in the area aside from those three and that it was cold that night.

Officer Slack testified that the three individuals were about twenty feet from the police car and that he made eye contact with them and continued to watch them as Officer Whitworth drove slowly past them. He said that he saw their faces clearly because they were under a street light. He said that one of the three wore all dark clothing and one wore a gray shirt with pants of a different color. He stated that he could not remember what the third individual wore. He identified the defendant as the

2

one wearing all dark clothing and stated that he thought that the defendant was the tallest of the three. He said that he and Officer Whitworth agreed to drive back around the circle and to question the men if they were still standing there when the officers returned.

Officer Slack testified that he turned to face the road, and he immediately heard four very loud gunshots in rapid succession. He said that the shots sounded as though they came from a large caliber weapon, and it seemed as though they went directly over his ear. He said that the police car was forty to fifty feet away from the three men when he heard the shots. He said that the bullets did not hit the police car and that he did not know where they went. He said that he feared for his life.

Officer Slack testified that he ducked down, got out of the car, and ran crouching low with his gun drawn to the place where the three men had been standing. He said that he could see and smell gun smoke at that spot. He said that as he checked around the corners of building 112, he heard a door slam twice. He said that he did not see anyone when he looked around the corner. He said that he canvassed the area but did not locate the three men. He said that he identified himself as a police officer and knocked on the first door on the back of building 112, but no one answered. He stated that other officers arrived and kept apartment 112D under surveillance. He stated that about two hours later, the defendant and Datrick Cole came out the back door of 112D and that he recognized them as two of the three people he saw in the breezeway.

On cross-examination, Officer Slack testified that "no loitering" signs are posted in Parkview Courts and that he often checks identification to make sure bystanders live there. He said that he did not know whether the three men standing in the breezeway had a reason to be at Parkview Courts but that he intended to check

3

them because they were in a high crime area. He admitted that the shots could have been fired into the air, but he thought that the shots were coming toward him because they were so loud. He said that he found no evidence of bullets in the nearby area. He said that he did not know which of the three men standing in the breezeway fired the shots.

Officer Jeff Whitworth of the Jackson Police Department testified that at 9:30 p.m. on November 16, 1995, he and Officer Slack were patrolling the Parkview Courts Housing Project in an unmarked brown Crown Victoria. He said that he saw three black men standing in the breezeway between buildings 112 and 114 and that the men were watching the police car very closely. He said that the area was well lit and that no one else was outside. He said that one of the three men wore all black clothing, one wore a Texas sweatshirt, and one wore a brown jacket and dark pants. He said he told Officer Slack that if the three men were still standing there when they drove back around the circle, he and Officer Slack would stop and find out if the men lived in Parkview Courts.

Officer Whitworth testified that once he and Officer Slack turned to look back at the road, he heard four gunshots. He said that the police car was fifteen to twenty yards from the three men when he heard the shots and that the shots came from the direction of the breezeway. He said that he cringed and hoped that he and Officer Slack would not be hit. He said that he saw the three men run behind building 112, and he and Officer Slack went to find them. He said that Officer Slack told him that he had heard a door slam from building 112 and that the police set up a perimeter around 112. He said that he was still there when two of the men came out of the building. He identified the defendant as one of the men who had been standing in the breezeway and who later came out of 112D. He said that Datrick Cole came out of 112D with the

4

defendant. He said that the police later found Jonathan Harrison hiding in the attic of 112D, and he recognized Harrison as the third man from the breezeway.

On cross-examination, Officer Whitworth testified that he saw the three men in the breezeway for a very short time. He said that Mr. Cole was wearing a brown jacket and dark pants. He said that Mr. Harrison was the tallest of the three people in the breezeway. He admitted that he did not know where the shots were aimed. On redirect examination, he said that after the shots were fired, he saw gun smoke in the breezeway where the three men had been standing.

Officer George Pruitt of the Jackson Police Department testified that on November 16, 1995, at 11:45 or 11:50 p.m., he was dispatched to the perimeter around apartment 112D in Parkview Courts. He said that at about 12:45 p.m., two men came out the back door and were later identified as the defendant and Datrick Cole. He said that after they obtained a search warrant, the police searched the apartment and arrested a third individual inside. He said that he helped search the apartment and found a Charter Arms Bulldog .44 Special revolver in a kitchen cabinet. He said the gun was a six-shot revolver with a black finish and a wooden handle. He said that two of the six chambers contained live rounds and that the other four were empty. He said that this type of gun is a large caliber weapon, that the casings remain in the cylinder after firing, and that the casings must be removed manually.

On cross-examination, Officer Pruitt testified that although he is a certified crime scene technician, he was not able to determine upon sight whether the gun had been fired recently. He said that to his knowledge, no fingerprints were taken from the gun. He said that he wore gloves that night, but he did not know whether the other two officers collecting evidence wore gloves.

5

Officer Abe Jones of the Jackson Police Department testified that at 3:50 a.m. on November 17, he began to gather evidence in apartment 112D of Parkview Courts. He said that a Colt .38 revolver was found in the pocket of a jacket hanging in a closet. He said that a Smith and Wesson. 38 Special was found in a shoe in the closet in the back upstairs bedroom. He said that in that bedroom, they also found a semi-automatic .22 caliber Strong Ruger; a folder containing gang literature; and a cassette tape case containing shotgun shells, a pager, some marijuana, and some crack cocaine. He said that a fourth gun, a Charter Arms Bulldog .45 revolver, was found in the kitchen.

On cross-examination, Officer Jones said that he did not think that testing the guns for fingerprints was important in this case and that he did not wear gloves while collecting evidence. He said he did not seek any testing to determine whether the guns had been fired recently.

Datrick Cole testified that he knew the defendant by the nickname "Crock" but that they were not friends. He said that he was also charged in this case with attempted second degree murder, aggravated assault and criminal trespass. He said that if he testified truthfully in the defendant's trial, the state had agreed to ask the court to dismiss the attempted second degree murder and aggravated assault charges against him and to allow him to plead guilty to criminal trespass. He said that he was convicted of misdemeanor theft of property under five hundred dollars in February 1993.

Mr. Cole testified that between 9:00 and 9:30 p.m. on November 16, 1995, he saw the defendant and another man standing in the breezeway between buildings 112 and 114 of Parkview Courts, and he approached them. He said that neither he nor the defendant lived in Parkview Courts. He said that the defendant was

6

wearing a black leather jacket. He said that the other man was wearing a white sweater and that he thought the other man's name was Jonathan Harris,[1] but he had not met him before that night. He stated that no one else was standing outside.

Mr. Cole testified that the defendant asked him if he wanted to "double up," which means buy crack cocaine, but he told the defendant that he did not have any money. He said that an unmarked police car then drove around the circle. He testified that the defendant said he was "tired of these whores coming through the projects all the time" and that the defendant was referring to the police. He said the defendant fumbled in his jacket, pulled out a handgun, and fired three or four shots at the police car. He said the defendant's gun was black and appeared to be a revolver. He said the police car stopped, and the three of them ran in the back door of Kim Rainey's apartment. He admitted that he had no business entering the apartment without permission, but he said that he ran because he was afraid that he would be shot if he continued to stand in the breezeway. He said he did not have a gun.

Mr. Cole testified that once they were inside, the defendant turned the lights off and told them not to answer the door. He said he heard someone knock on the door, and again the defendant told them not to answer. He said that they looked out an upstairs window and saw that the police were blocking off the projects. He said he briefly saw the defendant hold out his gun again, but he did not know what the defendant did with the gun. He said that he and the defendant lay down on the bed to wait for the police to leave. He said the defendant's friend left the room, and Mr. Cole did not know where he went. He said that he and the defendant eventually decided to leave through the back door. He said the defendant told the police that there was no one else in the apartment.

---

[1]Mr. Cole referred to this individual as Jonathan Harris and Jonathan Harrison at various points in his testimony.

On cross-examination, Mr. Cole testified that he gave a statement to the police in which he said that he believed that two of the shots hit the corner of building 112. He admitted that he did not have to run when the others did, but he said that he panicked. He said that no one forced him to stay inside the apartment.

Investigator Donna Turner testified that she worked in the Violent Crimes Unit of the Jackson Police Department. She said that she took photographs of the defendant and Datrick Cole after officers brought them from the scene to booking. The photographs were admitted into evidence and show the defendant wearing a black leather jacket, a black t-shirt, and black pants and Mr. Cole wearing a medium blue Georgetown jersey and black pants. She said that on November 17, 1995, she talked with the defendant and then with Mr. Cole, and they each gave a statement.

Investigator Turner testified that the defendant told her that on November 16, he went to Kim Rainey's apartment at Parkview Courts, that he knew Kim, and that he had visited her before that night. She said that he related that he watched movies with Ms. Rainey and her friend, Dodd. Investigator Turner said that the defendant told her that Ms. Rainey left with another friend at about 5:30 p.m. and that he finished watching movies at 9:10 p.m. She said that he told her that Dodd and another friend left to return the movies and that Dodd asked him to stay and watch the apartment. Investigator Turner said the defendant told her that he, Mr. Cole, and two unnamed individuals remained in the apartment and that he had fallen asleep on the couch when he was awakened by gunshots. She said that he related that Mr. Cole and the two others were in the room when he looked out the window and saw some people he did not know scattering. She said that he told her that no one ran into the apartment. She stated that he said that he went back to sleep on the couch, later woke up, and started out the back door with Mr. Cole behind him when the police told him to get down. She said that he told her that he did not remember anyone knocking on the door, and he

8

told the police that no one else was in the apartment. She said the defendant said that he did not own or carry a gun and that he did not shoot anyone at Parkview Courts.

Investigator Turner testified that she took photographs of the scene after interviewing the officers involved and the suspects. On cross-examination, she estimated that based upon what the officers told her, the three men were standing about thirty feet from the police car when the shots were fired. She admitted that her investigation of the scene could not reveal the direction in which the bullets traveled.

Lee Netherly testified that he was the Director of Housing Management for the Jackson Housing Authority. He said that in November 1995, the defendant and Mr. Cole did not live in any unit of Parkview Courts. He said that the Jackson Housing Authority had never given the defendant or Mr. Cole permission to be in Parkview Courts or in apartment 112D. He said that "no loitering" signs were posted in Parkview Courts.

Jonathan Harrison testified that between 9:00 and 10:00 p.m. on November 16, 1995, he was waiting outside Kim Rainey's apartment for someone to pick him up. He said that he saw two police officers approaching in an unmarked brown car. He said that he started walking back toward Ms. Rainey's porch because he knew he was not supposed to be in Parkview Courts. He said that he was standing on the porch waiting for the police to pass when he heard four or five loud gunshots. He said that he had noticed four or five people in the breezeway where the shots came from but that he did not know any of them.

Mr. Harrison testified that the officers jumped out of their car and that one pointed his gun in Harrison's direction. He said that he ran into the apartment and that the defendant was inside. He said that he hid in the attic because he was not

9

supposed to be in the apartment and because he did not want the police to accuse him of anything. He said that he was arrested and taken to the police station where he gave a statement.

On cross-examination, Mr. Harrison testified that he went to Parkview Courts that night to see Ms. Rainey, whom he had just met. He said that when he got to her apartment, the front door was opened but the screen door was closed, and he could see the defendant lying on the couch. He said he knocked and asked for Ms. Rainey, and the defendant told him that she was not there. He said that he did not know the defendant before that night and that the defendant introduced himself as "Crock." He said that he was standing in the front yard of apartment 112D yelling to some girls across the street when he saw the police car. He said that he heard a door slam and that he heard scuffling beneath him while he was in the attic. He admitted that he was a member of the Gangster Disciples gang at that time, but he said he did not know if apartment 112D was a hangout for the gang.

Investigator Turner was recalled as a witness. She testified that while she was taking Mr. Harrison's statement, he told her that he had gone to Ms. Rainey's apartment a week before the incident. She said that Mr. Harrison told her that he had seen the defendant, whom he referred to as "Crock," leaving the apartment when he got there.

## SUFFICIENCY OF THE EVIDENCE

The defendant contests the sufficiency of the evidence, contending that the only evidence to support his convictions for aggravated assault comes from Datrick Cole, who received a plea bargain in exchange for his testimony. The defendant argues that Mr. Cole's testimony was contradicted by Mr. Harrison, who testified that four or five unknown people were in the breezeway when the shots were fired. The

defendant also states that the prosecution failed to present scientific proof of any gun being fired recently or of fingerprint evidence connecting him to the guns. We hold that the evidence is sufficient to convict the defendant of the aggravated assault.

Essentially, the defendant is asking us to reweigh the evidence. However, our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means that we do not reweigh the evidence, but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

The jury was apprised of the plea bargain Mr. Cole received for his testimony, was aware of the contradictions between the testimony of Mr. Cole and Mr. Harrison, and knew that the state presented no scientific evidence. Nevertheless, the jury was entitled to accredit Mr. Cole's testimony.

Moreover, in the light most favorable to the state, the police officers' testimony corroborates Mr. Cole's testimony. Mr. Cole testified that the defendant expressed his objection to the police patrolling in the projects, pulled out a gun, and fired four shots at the police car. The officers testified that they saw three men, one of whom was the defendant, standing in the breezeway. Immediately after they stopped watching these men, the officers heard four very loud gun shots. They saw gun smoke in the spot where the three men had been standing. Both officers testified that the shots caused them to fear injury. Based upon the evidence, the jury could reasonably

11

find beyond a reasonable doubt that the defendant was guilty of aggravated assault with respect to each of the officers.

In consideration of the foregoing and the record as a whole, we affirm the judgments of conviction entered by the trial court.

_____
Joseph M. Tipton, Judge

CONCUR:

_____
David G. Hayes, Judge

_____
L.T. Lafferty, Senior Judge

12